ROBERT THOMAS DEWEY, Petitioner v. COMMISSIONER OF INTERNATIONAL REVENUE, Respondent
Dewey v. Commissioner
Docket No. 26033-81.
United States Tax Court
T.C. Memo 1983-234; 1983 Tax Ct. Memo LEXIS 554; 45 T.C.M. (CCH) 1427; T.C.M. (RIA) 83234; April 28, 1983. Robert Thomas Dewey, pro se. Arlene A. Blume, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent determined a deficiency of $310 in petitioner's Federal income tax for the calendar year 1978. The issue presented for our decision is *555 whether petitioner Robert Thomas Dewey, the noncustodial parent of Joseph and Robin Dewey, is entitled to dependency exemptions under section 152(e)(2)(B) [1] for his two children. Some of the facts have been stipulated and are so found. Petitioner Robert Thomas Dewey (hereinafter Robert) resided in Baltimore, Maryland, when he filed his petition in this case. In 1974, Robert and his then wife, Marlene A. Crocken (hereinafter Marlene), were divorced and Marlene was awarded custody of the two children of the marriage, Joseph Dewey (hereinafter Joseph), who was 11 in 1978, and Robin Dewey (hereinafter Robin), who was 15 in 1978. During 1978 Marlene and the children resided in an apartment rented by Marlene. Robert had visitation rights, and usually saw Joseph and Robin once a week. The decree of divorce as applicable in 1978 required Robert to pay child support of $25 per week for each of his two children. Such payments were made through the Maryland Division of Parole and Probation. Robert introduced at trial a statement from the Baltimore City *556 Department of Social Services, Bureau of Support Enforcement (hereinafter the Department), [2] which certified that he made child support payments totaling $2,510.25 in 1978. Respondent introduced a similar statement from the Department which certified that Robert made child support payments totaling $2,302 in 1978. The parties were unable to explain this discrepancy. Robert testified that in addition to child support payments, he paid the following amounts to or on behalf of Joseph and Robin: Joseph
Robin
Medical expenses
$206.00
$57.00
Health insurance [3]
266.00
266.00
Christmas present
100.00
100.00
Birthday present
50.00
50.00
Allowance
200.00
200.00
Vacation spending money
30.00
30.00
Marlene testified that she made the following expenditures on behalf of Joseph and Robin in 1978: Joseph
Robin
Rent [4]
$600.00
$600.00
Gas and electricity [4]
147.77
147.77
Phone service [4]
60.00
60.00
Food [4]
1,040.00
1,040.00
Doctor bills
20.00
40.00
Eyeglasses
40.00
10.00
Clothing
225.00
225.00
Tuition
335.00
School Supplies
11.20
75.00
Yearbook
19.50
Little league
12.00
Life insurance
42.60
42.60
Vacation trip
135.00
135.00
Christmas
150.00
150.00
Birthday
25.00
25.00
Allowance
104.00
260.00
Laundry
69.33
69.33
Sewing machine
105.00
*557 When the parents of a dependent child are divorced, the custodial parent is deemed to have contributed over half of the child's support and is entitled to the dependency exemption. Sec. 152(e)(1). However, the statute provides an exception to this general rule for taxable years in which the noncustodial parent furnishes $1,200 or more for the support of the child. In such circumstances, to secure the dependency exemption the custodial parent must clearly establish that he or she furnished more than the noncustodial parent furnished for the child's support. Sec. 152(e)(2)(B). When the noncustodial parent furnishes $1,200 or more for the support of each child, and the custodial parent is not before the Court, the burden shifts to the respondent to clearly establish that the custodial parent furnished more for the child's support than did the noncustodial parent. , affd. per curiam . [5]
*558 Robert contends, and respondent denies, that Robert furnished more for Joseph's support and for Robin's support than did Marlene. Since there is no disagreement concerning the applicable law, we have only to decide which parent furnished more for the support of Joseph, and which furnished more for the support of Robin. Since the record is woefully short of documentation, our decision must rest in large part on our evaluation of the testimony of Robert and Marlene. Some of the amounts Marlene testified to having expended on behalf of Joseph and Robin are adequately substantiated by canceled checks or receipts; the remainder represent Marlene's best effort to reconstruct her 1978 expenses. On his cross-examination of Marlene, petitioner challenged only her claimed expenditure of $105 on a sewing machine for Robin. Under cross-examination, Marlene admitted, and we find, that she used the sewing machine for personal purposes, and that only half of its cost, or $52.50, is properly allocable to Robin. Marlene was generally a credible witness. Since Robert did not challenge any of the other expenses to which she testified, we find that she actually incurred those expenses on behalf *559 of Joseph and Robin in the amounts set out above. Respondent challenges several of the expenses that Robert testified to having incurred on behalf of Joseph and Robin. First, we must determine how much child support Robert paid. The record provides no hint as to which of the two figures certified by the Department as the total child support paid by Robert in 1978, $2,510.25 or $2,302, is correct. Respondent neither contacted the Department for explanation of this discrepancy, nor established that such action would have been futile. Under the circumstances, since the burden of proof is on respondent, we find that Robert paid child support through the Department of $2,510.25 in 1978, $1,255.12 for Joseph and $1,255.12 for Robin. Respondent asks that we find that Robert made no health insurance payments allocable to Joseph or Robin. The decree of divorce required Robert to maintain health insurance on the children. Robert testified that he paid a total of $800 to his union for health insurance covering himself, Joseph, and Robin. According to Marlene, the policy provided for $100 deductile, and covered 80 percent of subsequent expenses. Marlene admitted that Robert's insurance *560 covered some of the children's medical expenses, but testified that his health insurance was in effect only when Robert worked a certain minimum number of hours, and suggested that the coverage was in effect for less than the entire year. The parties stipulated, and we find, that Robert incurred medical expenses of $206 on behalf of Joseph and of $57 on behalf of Robin. Respondent argues that had he maintained health insurance coverage for all of 1978, Robert would not have incurred these medical expenses totaling $263, since all but the first $100 would have been covered. This argument supports Marlene's testimony that Robert did not maintain health insurance for the whole year, but does not prove that he maintained no health insurance during the year. On this record, we are satisfied that Robert did maintain health insurance covering Joseph and Robin during at least part of the year. Doing the best we can with the record before us, we find that Robert paid $450 to maintain health insurance on himself, Joseph, and Robin, with $150 allocable to Joseph and $150 to Robin. Respondent also questions the amounts which Robert testified to having given to Joseph and Robin for *561 Christmas and birthday presents, vacation spending money, and allowances. Marlene testified that Robert did not give Joseph and Robin as much as he claimed to have given. [6] Doing the best we can with the record before us, we find that during 1978 Robert gave Joseph $75 for Christmas, $25 for his birthday, $200 as allowance, and $15 for vacation spending money, and that he gave Robin $75 for Christmas, $25 for her birthday, $100 as allowance, and $15 for vacation spending money. *562 For convenience, our findings of fact are set out in the following table: Payments furnished by Robert in 1978
Joseph
Robin
Weekly support payments
$1,255.12
$1,255.12
Medical expenses
206.00
57.00
Health insurance
150.00
150.00
Christmas present
75.00
75.00
Birthday present
25.00
25.00
Allowance
200.00
100.00
Vacation spending money
15.00
15.00
TOTAL:
$1,926.12
$1,677.12
Payments furnished by Marlene in 1978
Rent
$ 600.00
$ 600.00
Gas and electricity
147.77
147.77
Phone
60.00
60.00
Food
1,040.00
1,040.00
Medical expenses
20.00
40.00
Eyeglasses
40.00
10.00
Clothing
225.00
225.00
Tuition
335.00
School Supplies
11.20
75.00
Yearbook
19.50
Little league
12.00
Life insurance
42.60
42.60
Vacation trip
135.00
135.00
Christmas presents
150.00
150.00
Birthday presents
25.00
25.00
Allowance
104.00
260.00
Laundry
69.33
69.33
Sewing machine
52.50
SUBTOTAL:
$3,016.90
$2,951.70
Minus Robert's
support payments:
-1,255.12
-1,255.12
TOTAL:
$1,761.78
$1,696.58
Since Robert furnished more for Joseph's support than did Marlene, Robert is entitled to the dependency exemption *563 for Joseph. Since Marlene furnished more for Robin's support than did Robert, Robert is not entitled to the dependency exemption for Robin. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. The record contains no explanation of the relationship, if any, between the Department and the Maryland Division of Parole and Probation.↩
3. Robert testified to having made $800 in payments for a health insurance policy covering himself and his two children, and allocated one-third of this amount to each child.↩
4. The figures for rent, utilities and food represent the amount of Marlene's total expenditure allocable to each child.↩
5. .↩
6. And as far as spending money for the children, he does give Joseph, but he doesn't give Robin, like he said he gave Robin all that. He gives Joseph a few dollars at a time. Now Robin doesn't see him quite as much. She is a little bit older. The figures for vacation, I don't remember him giving them money for vacation. Now if he did, I don't know anything about it. Christmastime he gives them some money. How much, I don't remember that. I mean, I don't remember him ever giving them $100 for Christmas. He says he gives them $100. I don't remember him giving them $100. Birthdays, I give $25, and I don't ever remember him giving $50 to each child for their birthday. Now if he has got checks to prove it, then I am wrong, but as far as I remember, I don't remember him doing this. At Christmastime he usually gives them $50 each; in fact, my son got $50 the other day from him for Christmas, and I don't ever remember him ever giving $100 to those children for Christmas.↩